# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

EZEKIA SU NEMUN,

                Plaintiff,

    v.                                            Case No. 10-C-175

MICHAEL ASTRUE,

                Defendant.

## DECISION AND ORDER

Plaintiff Ezekia Su Nemun filed this action challenging the decision of the Commissioner of Social Security denying her Supplemental Security Income ("SSI") benefits. She alleges the administrative law judge ("ALJ") erred in prohibiting her from testifying about her mental health. She also alleges that the ALJ failed to include several of her limitations into his residual functional capacity ("RFC") assessment and erroneously evaluated her credibility. For the reasons given below, the case will be remanded for further proceedings.

## I.  Standard of Review

In reviewing the ALJ's decision, a federal court examines whether it is supported by substantial evidence. *O'Connor-Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir. 2010). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). An ALJ need not specifically address every piece of evidence, but must

provide a "logical bridge" between the evidence and his conclusions. *Id.* (citing *Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008)). An ALJ's credibility determination is entitled to special deference because the ALJ has the opportunity to observe the claimant testifying. *Castile v. Astrue,* 617 F.3d 923, 928-29 (7th Cir. 2010). "Rather than nitpick the ALJ's opinion for inconsistencies or contradictions, we give it a commonsensical reading." *Jones v. Astrue,* 623 F.3d 1155, 1160 (7th Cir. 2010). Accordingly, credibility determinations are reversed only if they are patently wrong. *Id.*

## II.  Analysis

### A.  Impairments and RFC

The ALJ found that Plaintiff, who was in her mid-forties, had severe impairments of asthma and depressive syndrome. He found that Plaintiff had moderate limitations in daily living activities, marked limitations in social functioning, and mild limitations in pace, persistence and concentration. He concluded that Plaintiff had the residual functional capacity to perform medium work, with the following restrictions: she cannot be exposed to dust or fumes, etc.; cannot have public contact; can have only occasional contact with peers; and she is limited to simple work. (Tr. 14.) Based on this conclusion, the ALJ found that Plaintiff was not disabled. I address each of the Plaintiff's arguments below.

### B.  Due Process

Plaintiff first argues that her due process rights were violated because the ALJ refused to allow her to testify about any mental health conditions she experienced. Plaintiff's counsel began a line of questioning asking whether Plaintiff had "a fear of men." (Tr. 296.) At that point, the ALJ

interjected and asked "Are there any mental health expert or records that show any kind of mental impairment?" (Tr. 296).

| | |
|---|---|
| Counsel: | No. She's not seeing any doctors or therapists for that. |
| ALJ: | So why are we pursuing it? |
| Counsel: | Well . . . I think it's important because . . . she has a difficult time dealing with people and she has – |
| ALJ: | Where is that reflected in the record? |
| Counsel: | Well it's in the Social Security notes for the case development worksheet. I mean there's no doctors, you know, specifically that are saying that in the record, but it shows, based on her RFC technique form and the mental – |
| ALJ: | Where is there any notation by any medical source to that affect? [sic] |
| Counsel: | Well, in the psychiatric review technique form by the Social Security doctors, it shows that . . . she has marked limitations in – . . . |

(Tr. 296-98.)

After some discussion, it became clear that the only mental health evaluations in the record were the evaluations performed by Social Security psychologists as a part of Plaintiff's application for disability benefits. The ALJ (whose dialogue indicated that he had reviewed the record) concluded that there were no indications of psychological problems in the record because Plaintiff had never sought treatment. In other words, apart from the psychologists she interacted with as a part of her disability application, there were no medical records supporting any mental health limitations. The ALJ thus concluded that Plaintiff had not met her burden to show any mental impairment and declined to allow any testimony on mental impairments. (Tr. 300.)

A claimant's testimony should not be discredited for failure to seek or follow through on treatment without first considering or inquiring into other possible explanations for the infrequent or irregular medical visits or failure to seek medical treatment. *Moss v. Astrue,* 555 F.3d 556, 562 (7th Cir. 2009). Here, the ALJ did not discredit Plaintiff's testimony for failing to seek treatment, he barred her testimony altogether. At a minimum, this Circuit requires an ALJ to probe other

reasons why a claimant would lack treatment records, and the ALJ could have done this by asking the Plaintiff why she had not sought treatment for the mental health issues she was now suggesting she had. (In fact, she stated that she had been institutionalized on more than one occasion, but there were no records of that in the file.) Records suggest that Plaintiff refuses to take prescription medications because she had tried these in the past without success. (Tr. 233.) According to Dr. Pierquet, "She said at various times she was on Haldol, Valium, Prozac, and Xanax. [She said] 'They made me high and gave me nightmares.'" (*Id.*) Perhaps this was why she had not sought treatment, but her attorney was prohibited from venturing down that road.

Clearly there are cases in which a claimant will throw in the proverbial kitchen sink and try to include every possible ailment or mental health issue in her testimony, no matter how minuscule or unsupported. In cases where it is clear that a medical issue is simply being tacked on with no basis in fact, an ALJ is entitled to curtail testimony on the subject. Hearings are not medical bull sessions where every bunion or bad dream needs to be explored. ALJs have burgeoning caseloads and must manage their time accordingly. But here, the claimant's mental health arguments were not coming out of left field. True, she was not currently seeking treatment for depression, but she had been seen by two psychologists in connection with her application, and these records supported a diagnosis of depression.[1] In fact, the ALJ's opinion concluded that Plaintiff did suffer the severe impairment of depressive syndrome. (Tr. 14.) The ALJ further concluded that any jobs Plaintiff obtained could not involve public contact and could involve only occasional contact with peers. (*Id.*) The ALJ also gave "the most weight" to the opinion of Dr. Bauer, the state agency

---

[1]There is admittedly something unusual about the fact that by ordering mental health evaluations, the agency's own application process actually produced the only independent medical evidence of a disability.

psychologist. Dr. Bauer's RFC form found that Plaintiff had moderate limitations in eight of the twenty categories, including the ability to perform within a schedule and maintain regular attendance. (Tr. 174-175.) Plaintiff was also "markedly limited" in her ability to interact with the general public. (Tr. 175.)

Given the ALJ's ultimate conclusions about Plaintiff's mental impairments, it is obvious that Plaintiff had, in fact, adequately supported her claim for disability based on a mental impairment. Accordingly, the ALJ should have allowed her to testify. It is unclear what her testimony would have been, of course, but it could have strengthened her application and explained why she had not sought treatment recently.

## C. RFC and Hypothetical Question

Plaintiff also argues that the ALJ erred by failing to account for her mental health limitations in the hypothetical questions he posed to the vocational expert ("VE"). This omission was not surprising, given the ALJ's in-hearing conclusion that Plaintiff had not established any mental health limitations.

"When an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record." *Stewart v. Astrue,* 561 F.3d 679, 684 (7th Cir. 2009). As this Court recently found in a similar case, an ALJ cannot side-step this requirement by limiting the claimant to a given type of work (e.g., light work), and neither is it enough (usually) to limit a claimant to no contact with the public. Instead, the ALJ must include the specific limitations supported by the record. *See Dobrecevich-Voelkel v. Astrue,* 2011 WL 832250, *4 (E.D. Wis. 2011). Here is an example of the proper procedure, which I borrow from an Eleventh Circuit case:

5

The ALJ modified his hypothetical by adding limitations that mirrored the reports of Dr. Legum and the two state consultants that completed the MRFC forms. Specifically, the ALJ asked about an individual with a moderate inability to be punctual, sustain an ordinary routine, and complete a normal workday and workweek. During the hypothetical, the ALJ, the VE, and Nation's counsel had a discussion concerning the definition of "moderate." The ALJ said moderate is defined as "seriously interfering" with the task. Based on this definition and hypothetical, the VE then listed three jobs available in the national economy for an individual fitting this description.

*Nation v. Barnhart,* 153 Fed. Appx. 597, 599, 2005 WL 2757531, *2 (11th Cir. 2005).

Here, the ALJ's hypothetical limited Plaintiff to simple work with no public contact. It did not, however, include the moderate and marked limitations found in the record by Dr. Bauer, which the ALJ accepted as valid by the time of his decision. ("I give the most weight to the opinion of Dr. Bauer.") (Tr. 17.) Accordingly, on remand the RFC question should incorporate the limitations supported by the record.

## D. Migraine Headaches

Plaintiff also argues the ALJ erred by failing to incorporate any limitations resulting from her migraine headaches. Plaintiff testified that she got migraine headaches that "last for days" if she didn't take oxygen. (Tr. 303.) "I have to have oxygen every day, five times a day, or I have very severe migraines . . . or cluster headaches." (*Id.*) Her testimony finds support in the medical record as well. She repeatedly discussed migraines with her chiropractor. (Tr. 128-31.) In 2008, she also complained of migraines to Dr. Haffar, who prescribed Depakote and Midrin. (Tr. 126.) In a follow-up visit, which the ALJ cited, Dr. Haffar noted that "she uses oxygen and takes Lyrica and one-third of Imitrex 100 mg and usually it takes her headaches away." (Tr. 124.)

Although the ALJ did not explicitly address Plaintiff's migraines, the government argues that he was entitled to conclude that the migraines were essentially controlled by Plaintiff's use of

oxygen. Plaintiff did testify that the oxygen helped, but she also testified that she still gets a migraine once per week even with the oxygen. (Tr. 303.) The ALJ did not address why migraines were not deemed a severe impairment. If Plaintiff suffered a migraine once per week, and if it lasted hours, that could seriously impact her ability to work. More importantly, even if oxygen was effective in preventing or mitigating Plaintiff's migraine headaches, oxygen is not a simple pill that one can ingest – it is a cumbersome and time-consuming procedure. The record does not explain what taking oxygen "five times a day" entails, but it is likely that such a procedure would seriously interfere with one's job. For example, in a recent Arizona case, the court reversed and remanded for an award of benefits in part because the claimant's oxygen use would interfere with a job. *Laux v. Astrue,* 2010 WL 3719234, *6 (D. Ariz. 2010) ("The vocational expert stated that if Plaintiff needed continuous oxygen treatment, such treatment would eliminate Plaintiff's ability to do even light work-which includes all the jobs that the vocational expert had stated Plaintiff otherwise could do. The ALJ specifically asked if continuous oxygen would eliminate any job, and the vocational expert said yes.") *See also Wilkinson v. Astrue,* 2008 WL 4372011, *6 (D. Idaho 2008) ("Petitioner alleged that he needed to use oxygen approximately four times per day, a factor which would preclude work according to the Vocational Expert.") This does not mean that oxygen would necessarily eliminate any job, it simply means that the question needs to be explored before a conclusive RFC can be determined.

## E. Credibility

Finally, Plaintiff argues that the ALJ erred in assessing her credibility as "poor." (Tr. 17.) The ALJ noted that Plaintiff's allegations had been questioned by more than one evaluator. Specifically, Dr. Steffens, a psychologist, had found that Plaintiff's insistence that she was a

hemophiliac and legally blind was bordering on delusional. (Tr. 273.) Dr. Steffens also noted that Plaintiff's interpretation of some events "seems improbable." (*Id.*) (Even so, Dr. Steffens found that she met criteria "for several mental disorders.") (*Id.*)

Although the ALJ cited other factors for discounting Plaintiff's credibility, I am satisfied that the report of Dr. Steffens suffices to build the requisite logical bridge. Dr. Steffens was not suggesting that Plaintiff was malingering or making things up, but even so the report suggests strongly that Plaintiff had a somewhat dramatic or exaggerated impression of her own disabilities and limitations. The ALJ was entitled to cite that as a reason (indeed, a strong reason) for not finding the Plaintiff fully credible. I agree with the Plaintiff that all of the reasons the ALJ cited would not bear close scrutiny, but the report of Dr. Steffens is a compelling reason for any impartial observer to take Plaintiff's allegations with a grain of salt. The ALJ was not "patently wrong" in discounting her credibility. *Jones v. Astrue,* 623 F.3d 1155, 1160 (7th Cir. 2010).

## III. Conclusion

For the reasons given above, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this opinion. The clerk will enter judgment accordingly.

**SO ORDERED** this   22nd   day of March, 2011.


  s/ William C. Griesbach
William C. Griesbach
United States District Judge

8